UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RUDOLPH JAY COULTER,

                             Plaintiff,

              - against -

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED: 5/10/2023

22-CV-1149 (RWL)

**DECISION AND ORDER:**
**SOCIAL SECURITY APPEAL**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Rudolph Jay Coulter ("Coulter"), represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Coulter is not entitled to disability insurance benefits ("DIB") and supplemental social security income ("SSI"). Coulter has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, asking the Court to vacate the administrative decision and reverse or remand the case for a new hearing and decision. The Commissioner has cross-moved for judgment on the pleadings, asking the Court to affirm the Commissioner's decision. For the reasons explained below, the Court GRANTS Coulter's motion and DENIES the Commissioner's motion.

**APPLICABLE LAW**

**A.    Standard Of Review**

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner. 42 U.S.C. § 405(g); *Skrodzki v.*

*Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *accord Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'"  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)).  Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the Administrative Law Judge ("ALJ") were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F. Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would **have to conclude otherwise**."  *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60,

3

62 (2d Cir. 1982).  The court must afford the Commissioner's determination considerable deference and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'"  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same) (quoting *Jones*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015).  Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error."  *Dunston*, 2015 WL 54169, at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## B.    Determination Of Disability

Under the Act, a person meeting certain requirements and considered to have a disability is entitled to disability benefits.  42 U.S.C. § 423(a)(1).  The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

4

To determine whether an individual is disabled and therefore entitled to benefits, the Commissioner conducts a five-step sequential analysis.  20 C.F.R. § 404.1520(4).[1] First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a severe impairment, which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments is, or medically equals, one of the impairments included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment or impairments meet or medically equal one of the Listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

---

[1] As noted at the outset, this case involves both DIB and SSI benefits.  For present purposes, the regulatory standards for DIB determinations and SSI provisions are essentially the same.  *Canter v. Saul*, No. 3:19-CV-00157, 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020) ("The regulations for disability and disability insurance and supplemental security income benefits are virtually identical.  The DIB regulations are found at 20 C.F.R. § 404.900, *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901, *et seq.*")  For simplicity, in the absence of a material difference, the Court cites to only the DIB regulations.

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments.   The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), (h).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. §§ 404.1520(a)(4)(v), (g), (h).  If the claimant, as limited by his RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4)(iv), (v).  The claimant bears the burden of proof for the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that he is unable to perform his past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

The Court sets forth here a brief summary of the case to provide context for understanding the discussion that follows.  Additional relevant facts are referenced in the discussion.

**A.      Coulter**

Coulter was born in 1954.  (*See* R. 31. [2])  He obtained a high school education.  (R. 31.)  He previously worked as resident supervisor at a "three-quarter house for guys that … had drug problems" and then as a construction worker.  (R. 32, 35.)  Coulter stopped working in 2014 "because [his brother-in-law] wasn't paying" him.  (R. 35-36.)  Coulter did not look for work after that; his "age played a big part" and "that type of labor" "caught up with" him.  (R. 36.)

**B.      The First Administrative Proceeding**

On June 7, 2016, Coulter filed applications for DIB and SSI, alleging onset of disability beginning July 1, 2014, due to sciatica and high blood pressure.  (R. 61-62, 159.)  The Administration denied Coulter's claims on September 21, 2016 (R. 59), after which Coulter requested a hearing.  (R. 95-96.)  On June 19, 2018, a hearing was held before ALJ Miriam L. Shire.  Both Plaintiff and Vocational Expert Kelly Bowman ("VE Bowman") testified.  (R. 25-58.)  The ALJ issued her decision on September 26, 2018, finding that Coulter was not severely impaired and therefore not disabled.  (R. 11-21.)  The ALJ's decision was affirmed by the Administration's Appeals Council.  (R. 1-3.)

On July 25, 2019, Coulter filed a case in this District (*Coulter v. Saul*, No. 19-CV-6935) challenging the Administration's decision.  While the case was pending, but before briefing, the parties entered into a stipulation remanding the case for further administrative proceedings.  (R. 547.)  On January 10, 2020, the Appeals Council issued a remand order, vacating the earlier administrative decision and directing the ALJ to further evaluate

---

[2] "R." refers to the Certified Administrative Record filed on July 21, 2022 at Dkt. 15.

the severity of Coulter's musculoskeletal impairments and conduct a new analysis.  (R. 551-53.)

## C.     The Second Administrative Proceeding

On remand, the ALJ held a new hearing on July 17, 2020.  (R. 480-533.)  Testifying witnesses included Plaintiff, independent medical expert Dr. Allan Levine, and a different VE, Marian Marracco ("VE Marracco").  The ALJ issued her decision on September 30, 2020.  (R. 455-73.)

Following the requisite five-step analysis, the ALJ first determined that Coulter had not engaged in substantial gainful activity since the alleged onset date of July 1, 2014. (R. 460.)  At steps two and three, the ALJ determined that Coulter suffered from severe impairments consisting of degenerative joint disease of the bilateral knees and left shoulder impairment (R. 460), although none, singly or together, met or medically equaled any impairment included in the Listings.  (R. 463.)

The ALJ considered evidence of other impairments but determined none of them to be severe.  With respect to physical impairments, the ALJ acknowledged that Coulter had been assessed with back pain, varicose veins in his legs with left calf pain, and high blood pressure but found "insufficient evidence in the medical record that these impairments have more than a *de minimis* effect on the claimant's ability to perform physical or work activities."  (R. 461.)

The ALJ made a similar determination as to mental impairments.  The ALJ noted that Coulter had been assessed with anxiety and opioid disorder for which he received treatment at a methadone clinic but again found insufficient evidence to conclude that those impairments had more than a *de minimis* effect on Coulter's ability to work.  (R.

8

461.)  Among other evidence, the ALJ referenced the opinion of Coulter's primary care physician, Dr. Mitchell Shear, that Coulter had no or only mild limitations in his ability to understand, remember or apply information, to interact with others, to concentrate, persist or maintain pace or to adapt or manage himself, and that Coulter "had no functional limitations due to his mental impairments."  (R. 461.)  Accordingly, while finding that Coulter had "mild" limitations in interacting with others as well as in concentrating, persisting, or maintaining pace, Coulter's mental impairments were not severe.

At step four, the ALJ determined that Coulter had the RFC to perform medium work except that Coulter must use a cane held in his right dominant hand and could not reach overhead with his left non-dominant arm.  (R. 463.)  The ALJ did not discuss Coulter's mental limitations in formulating his RFC.  Based on testimony from the VE, the ALJ found that Coulter was capable of performing his past relevant work as a resident supervisor. (R. 467.)  Accordingly, the ALJ found Coulter not disabled.  (R. 468.)

The Appeals Council denied Coulter's request for review, making the ALJ's decision the Commissioner's final decision after remand.  (R. 449-52.)  Coulter then filed the instant action on February 10, 2022, contesting the ALJ's decision.  Coulter moved for judgment on the pleadings; the Commissioner cross-moved for judgment; and Coulter filed a reply brief.  The case is now ripe for decision.

## DISCUSSION

Coulter argues that the ALJ committed two errors requiring reversal or remand. First, Coulter contends that the ALJ failed to reconcile conflicting testimony between VE Bowman who testified in the 2018 hearing and VE Marracco who testified in the 2020 hearing on remand.  Second, Coulter argues that, in formulating Coulter's RFC, the ALJ

failed to take into account the evidence that Coulter had mild mental limitations.  Coulter's first argument does not stand up to scrutiny, but his second argument does.

### A.  The ALJ Did Not Err In Considering The VE Testimony

In her 2020 decision, the ALJ makes no mention of the 2018 testimony of VE Bowman.  Coulter argues that was error because the VE testimony was outcome determinative and the testimony of VE Bowman in 2018 conflicted with VE Marracco's 2020 testimony.  According to Coulter, "[h]ad the testimony from both VEs been properly reconciled, a finding of disability was required for the entire time period of this claim."  (Pl. Mem. at 10.[3])  And, Coulter argues, even if the ALJ did consider VE Bowman's testimony, the ALJ's decision makes no mention of it, thus depriving the court of the opportunity to meaningfully review the ALJ's decision.  (*Id.* at 12.)  The premise of Coulter's argument, however, is faulty – there is no conflict between the two VE's testimonies.

In the 2018 hearing, VE Bowman was asked whether there were jobs available to a hypothetical person of Coulter's age, education, and past experience, with an RFC to perform medium work but who required use of a cane to ambulate in one hand; could sit, stand or walk one hour at a time, taking one to two minutes to change positions; could occasionally use stairs; could not drive a motor vehicle, move heavy objects, or operate dangerous machinery; and could not work at unprotected heights.  (R. 55.)  VE Bowman answered that such a person would not be able to perform their past work and that there would be no work available to such a person at the medium level of exertion.  (R. 55.)

---

[3] "Pl. Mem." Refers to Plaintiff's Memorandum of Law In Support Of A Motion For Judgment On The Pleadings, at Dkt. 18.

In the 2020 hearing, the ALJ posed a materially different hypothetical to VE Marracco based on a further developed medical record and additional medical opinions, including that of the independent medical examiner to which the ALJ gave great weight. (R. 466.)  The ALJ asked the VE about a hypothetical person who could not reach overhead with their non-dominant arm.  (R. 520.)  The ALJ also asked the VE to consider two "add-ons," one being that the person needs to hold a cane in their right dominant hand to walk, the other being that the person would have to elevate their leg.  (R. 521.) In answer to those scenarios, VE Marracco testified that only the restriction of elevating the person's leg would preclude employment at all levels.  (R. 522-25.)

The hypothetical about leg elevation arose likely because Coulter testified in the 2020 hearing, unlike at the 2018 hearing, that he "always tr[ies] to keep [his left leg] up" due to a varicose vein.  (R. 502.)  As noted above, however, the ALJ found that Coulter's varicose vein condition was not severe and would not have more than a *de minimis* effect on Coulter's ability to work.  Coulter does not dispute that aspect of the ALJ's decision and does not argue that the ALJ erred by not including leg elevation as a restriction in Coulter's RFC.  Rather, Coulter argues that the ALJ erred by not reconciling VE Marracco's testimony in 2020 with VE Bowman's testimony from 2018.  But as the ALJ posed different hypotheticals to the two VE's, there is no conflict to reconcile.

The Commissioner's brief makes this very point:  "on remand, the ALJ further developed the record, re-evaluated the evidence, and came to a different conclusion regarding the extent of Plaintiff's physical and mental limitations, resulting in a different hypothetical given to Ms. Marracco at the second hearing than what had been posed to

Ms. Bowman at the first hearing." (Def. Mem. at 9-10.[4]) Tellingly, Coulter does not say otherwise in his reply. Instead, Coulter glosses over the fact that the two VE's testimony answered materially different hypotheticals and therefore do not actually conflict. (*See* Pl. Reply at 1-4.[5]) Nor does Coulter even identify what specifically about the two VE opinions purportedly does conflict.[6] Coulter also cites to inapt caselaw for the uncontroversial proposition that an ALJ cannot "pick and choose" evidence that supports her decision while ignoring other evidence that does not, and that it is the ALJ's duty, not the court's, to reconcile conflicting evidence. (Pl. Mem. at 11-12.) Again, there is nothing here to reconcile, and the ALJ did not selectively pick and choose the evidence on which her decision is based.

Even if the 2018 and 2020 VE testimonies were conflicting, which they are not, the Commissioner points out that Coulter has not cited any legal authority for the proposition that an ALJ must consider on remand prior VE testimony given in connection with a vacated decision. (Def. Mem. at 9.) In contrast, the Commissioner cites to numerous cases, albeit from outside the Second Circuit, either affirmatively rejecting the position advanced by Coulter or more generally holding that an ALJ need not address conflicting evidence from a hearing that was vacated. *See, e.g.*, *Ramirez v. Commissioner of Social Security*, 463 F. App'x 640, 643 (9th Cir. 2011) (noting that the ALJ could properly rely on

---

[4] "Def. Mem." refers to the Memorandum Of Law In Support Of Defendant's Cross-Motion For Judgment On The Pleadings And In Opposition To Plaintiff's Motion For Judgment On The Pleadings, at Dkt. 21.

[5] "Pl. Reply" refers to Plaintiff's Reply To Defendant's Memorandum Of Law In Support Of The Commissioner's Cross-Motion For Judgment On The Pleadings, at Dkt. 22.

[6] Rather than explaining how the 2018 and 2020 VE testimonies conflict, Coulter points out that both VEs testified similarly, stating, "[s]pecifically, both VEs testified that Plaintiff would have no transferable skills to other work." (Pl. Mem. at 10.)

VE testimony from a second hearing despite a "lack of explanation for not relying on the testimony of the unavailable [VE] from the first hearing"); *William C.H. v. Kijakazi*, No. 3:21-CV-105, 2022 WL 2865869, at *5 (E.D. Va. July 5, 2022) ("Because the ALJ's initial decision was vacated by the Appeals Council, the ALJ was not required to reconcile the opinions of [the doctor] from the April 2017 Hearing and [the second doctor] from the May 2020 Hearing"), *R & R adopted*, 2022 WL 2835412 (E.D. Va. July 20, 2022), *aff'd sub nom.*, *Hood v. Kijakazi*, 2023 WL 3051823 (4th Cir. April 24, 2023); *Curtis v. Colvin*, No. 3:15-CV-225, 2016 WL 1056682, at *18 (N.D. Tex. Feb. 26, 2016) ("the ALJ was not required to resolve any conflict between the testimonies of two VEs"), *R & R adopted*, 2016 WL 1047105 (N.D. Tex. March 15, 2016).  Although the Court does not rest its decision on this line of cases (instead basing it on the absence of any conflict), Coulter does not distinguish them in any meaningful way and cites no contrary legal authority.

In sum, the ALJ did not err in evaluating the VE testimony.

**B.    The ALJ Erred In Formulating Coulter's RFC**

Coulter's second argument is based on the ALJ's consideration, or lack thereof, of the evidence regarding Coulter's mental limitations.  According to Coulter, in formulating Coulter's RFC, the ALJ erred by ignoring evidence of Coulter's "mild" mental limitations. More particularly, Coulter argues that although the ALJ analyzed Coulter's mental limitations to determine their severity at step two of the sequential analysis, the ALJ did not properly address those limitations in determining Coulter's RFC.  (Pl. Mem. at 13-14.) The Court agrees.

The analyses of impairments when determining severity at step two and when later formulating the claimant's RFC are related but distinct.  When assessing the severity of

mental impairments at step two, an ALJ must consider four broad areas of mental functioning known as the "Paragraph B" criteria.  20 C.F.R. § 404.1520a(c)(3).  The four areas are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *Id.*  Based on the record, the ALJ must make a finding as to the degree of any limitations in each area, using assessments of "none," "mild," "moderate," "marked," and "extreme."   20 C.F.R. § 404.1520a(c)(4).  If the ALJ rates the claimant's limitations in those area as "none" or "mild," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. § 404.1520(d)(1).

Finding an impairment to be non-severe is not the end of the ALJ's obligation to consider that impairment.  When formulating the claimant's RFC, the ALJ must consider "all of [the claimant's] medically determinable impairments … including … medically determinable impairments that are not 'severe.'"  20 C.F.R. § 404.1545(a)(2); *accord Novas v. Kijakazi*, No. 22-CV-1020, 2023 WL 2614362, at *11 (S.D.N.Y. March 8, 2023), *R & R adopted*, 2023 WL 2613550 (S.D.N.Y. March 23, 2023).  Analysis of impairments at step two and in formulating the RFC are "analytically distinct."   *David Q. v. Commissioner of Social Security*, No. 20-CV-1207, 2022 WL 806628, at *5 (W.D.N.Y. March 17, 2022).  As explained by the Administration in one of its rulings, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than at step 2] by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings …."  SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).  Accordingly, an "ALJ's

assessment at step two [does] not relieve [them] of the requirement to discuss Plaintiff's mental health impairments in formulating the RFC." *Garcia v. Commissioner of Social Security*, No. 21-CV-1230, 2022 WL 4234555, at *14 (S.D.N.Y. Sept. 14, 2022); *see also Amparo v. Commissioner of Social Security*, No. 20-CV-10285, 2022 WL 3084482, at *10 (S.D.N.Y. July 19, 2022), *R & R adopted*, 2022 WL 3084380 (S.D.N.Y. Aug. 3, 2022) (collecting cases).

Here, at step two, the ALJ provided a thorough analysis of Coulter's mental impairments, being anxiety and opioid disorder.  The ALJ started her discussion by stating that there is insufficient evidence to show that either mental impairment "has more than *di minimis* effect" on Coulter's ability to perform physical or work activities.  (R. 461.)  The ALJ noted that the record does not contain treatment notes from any mental health professional containing mental status examinations to establish the extent of the impairments, while also noting that Coulter was only prescribed medication in the treatment notes.  (R. 461.)  The ALJ also reviewed Dr. Shear's opinions regarding Coulter's mental impairments and gave them "some weight."[7]  (R. 461-62.)  The ALJ then analyzed each functional area of the Paragraph B criteria and found that Coulter has mild limitations with respect to interacting with others as well as with respect to concentrating, persisting, or maintaining pace.  (R. 462.)

In formulating Coulter's RFC, however, the ALJ failed to mention any mental limitations, mild or otherwise, and did not explain why she concluded that Coulter's mild mental health limitations did not result in any such limitations within the RFC.  (*See* R.

---

[7] The ALJ did not endorse Dr. Shear's assessment that Coulter would be off-task for 15 percent of each work day or absent two days a month.  (R. 462.)

463-67.)  That was error.  An ALJ may properly determine that mild limitations found during the Paragraph B analysis do not translate into functional limitations within the RFC. But an ALJ must provide a basis for understanding how they made that determination. Put another way, "[t]he ALJ may find that Plaintiff's mental impairments are inconsequential and, thus, reject the need to incorporate mental limitations into the RFC – but he must explain his reasoning for doing so."  *Laura Ann H. v. Saul*, No. 6:20-CV-397, 2021 WL 4440345, at *11 (N.D.N.Y. Sept. 28, 2021); *see also Novas*, 2023 WL 2614362, at *12 ("The requirement that the ALJ 'consider' a plaintiff's non-severe mental impairments in formulating her RFC cannot be discharged by the paragraph B analysis used at step two to rate the severity of those impairments. … If the ALJ concludes that the plaintiff's mental impairments do not require any RFC accommodation, he should clearly explain why").

Where, as here, the ALJ fails to do so, remand is required.  As explained by one court remanding an ALJ's decision, "[e]ven where 'substantial evidence supports the ALJ's finding that a claimant's mental impairment was nonsevere, it would still be necessary to remand … for further consideration where the ALJ failed to account for the claimant's mental limitations when determining her RFC.'"  *Amparo*, 2022 WL 3084482, at *10 (quoting *Ferreras-Matos v. Commissioner of Social Security*, No. 20-CV-7106, 2021 WL 7287630, at *15 (S.D.N.Y. Nov. 15, 2012), *R & R adopted*, 2022 WL 292921 (S.D.N.Y. 2018) (quoting *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012))); *see also Garcia*, 2022 WL 4234555, at *14 (remanding because ALJ failed to explain basis for not including mild and moderate limitations found at step two in formulating RFC); *Mandy C. v. Saul*, No. 5:18-CV-982, 2020 WL 1245348, at *5-6 (N.D.N.Y. March

16, 2020) (remanding because ALJ failed to explain basis for not including mental limitations in RFC despite finding non-severe major depressive order during step two); *MacDonald v. Commissioner of Social Security*, No. 17-CV-921, 2019 WL 3067275, at *3-4 (W.D.N.Y. July 11, 2019) (remanding because the ALJ found mild limitations in three Paragraph B functional areas but made no mention of them in formulating plaintiff's RFC).

*Garcia*, *Mandy C.*, and *MacDonald* are instructive.  In *MacDonald*, the ALJ found, at step two, that the plaintiff's major depressive order "does not cause more than a minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere."  2019 WL 3067275, at *2 (original brackets omitted).  At the same time, the ALJ found mild limitations in three areas: activities of daily living, social functioning, and concentration.  *Id.*  In formulating the RFC, the ALJ determined that the plaintiff could perform light work with certain physical limitations and that the plaintiff was capable of performing her past relevant work as a bank teller, billing clerk, cashier, and bartender. *Id.*  The court ordered remand because the ALJ, when formulating the plaintiff's RFC, did not address the mild limitations found at step two.  *Id.* at *3-4.

In *Mandy C.*, the ALJ determined that the plaintiff had non-severe mental impairments including affective disorder, anxiety disorder, unspecified depressive disorder, and panic disorder.  2020 WL 1245348, at *2.  A consultative doctor opined that the plaintiff had moderate limitations in her ability to appropriately deal with stress as well as mild to moderate limitations in her ability relate adequately with others.  *Id.* at *3.  The ALJ formulated an RFC that incorporated only physical limitations and found that the plaintiff was capable of performing her previous light work as a sales supervisor.  *Id.* at *2.  The court ordered remand, finding that because the ALJ's formulation of the RFC

contained no mention of mental limitations, the court "cannot be certain that the ALJ actually considered [plaintiff's] mental issues when addressing her RFC." *Id.* at *6 (quoting *MacDonald*, 2019 WL 3067275, at *4).

In *Garcia*, the ALJ found the plaintiff had non-severe mental impairments consisting of depressive disorder, adjustment disorder with mixed and anxiety and depressed mood, and alcohol use disorder. 2022 WL 4234555, at *9. As with Coulter, the ALJ found that the plaintiff had mild limitations in two of the Paragraph B criteria. *Id.* And, as here, the ALJ's RFC analysis did not demonstrate consideration of those mild limitations. *Id.* at *10, 14. As the court explained, "[t]he ALJ explicitly omitted discussion of Plaintiff's testimony regarding her mental health impairments in his RFC determination, noting that they 'have previously been found to be non-severe earlier in the decision.'" *Id.* at *14. In doing so, the ALJ erred because "the ALJ failed to engage in the type of more detailed assessment that an ALJ is required [to make] in reaching an RFC determination." *Id.*

The Commissioner does not address *Garcia*, *Mandy C.*, or *MacDonald* and instead cites to other cases standing for the undisputed proposition that "the ALJ may reasonably find that a mild limitation in one of the four special technique categories does not translate into any specific work-related limitations in the RFC." (Def. Mem. at 14-15.) But that assertion is inapt. The issue here is not whether such limitations must be included in the RFC, but rather what an ALJ must do to demonstrate that they have considered those limitations when formulating the RFC. Cases like *Garcia*, *Mandy C.*, and *MacDonald* are clear: "if the ALJ 'finds "mild" restrictions' resulting from a nonsevere impairment, the ALJ must address those restrictions as part of the RFC analysis. And when the ALJ fails to

address nonsevere mental impairments in formulating a claimant's RFC, it is 'necessary to remand the case for further consideration.'"  *MacDonald*, 2019 WL 3067275, at *3 (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 n.3 (10th Cir. 2013) and then *Parker-Grose*, 462 F. App'x, at 18) (internal citation and brackets removed).

The most apt case cited by the Commissioner is *Acevedo v. Saul*, 577 F. Supp.3d 237, 242-43, 247 (S.D.N.Y. 2021).  But *Acevedo* is distinguishable and ultimately only supports the basic proposition that a mild limitation found at step two does not necessarily require that that limitation be part of the RFC.  In *Acevedo*, the ALJ concluded at step two that plaintiff's anxiety disorder and depression were not severe but that the plaintiff had mild limitations as a result.  *Id.* at 242-43.  In formulating the plaintiff's RFC, the ALJ assessed that the plaintiff could perform light work with several physical limitations but made no mention of the plaintiff's mild mental limitations.  *See id.* at 243.  The ALJ then found that the plaintiff could perform their past relevant work as an office clerk.  *Id.*  In court, the plaintiff challenged the ALJ's RFC determination for five different reasons, including that the ALJ failed to adequately consider the plaintiff's mental impairments in his RFC analysis.  *Id.* at 249.  The court disagreed and found that "[t]he record illustrates … that the ALJ considered [Plaintiff]'s non-severe mental impairments during the RFC analysis."  *Id.* at 251.  As explained above, that did not happen here.

The Commissioner emphasizes that the ALJ acknowledged in her decision the distinction between the step two and RFC analyses and expressly stated at the end of step two that "the following residual functional capacity analysis assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  (R. 463.)  According to the Commissioner, the Court should "take the ALJ at

her word." (Def. Mem. at 13.) The Court does not question the integrity of the ALJ. But as other courts have recognized, such a conclusory statement does not suffice where the RFC analysis is lacking. Indeed, similar perfunctory statements were deemed insufficient in *MacDonald*, 2019 WL 3067275, at *2-3 (characterizing as "lip service" the ALJ's statement that "the following residual function capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis"), and *Mandy C.*, 2020 WL 1245348, at *6 (stating that "given the absence of any mental restrictions or limitations in the RFC, the ALJ's reference to the proper standard set forth in the regulations, without more, is insufficient lip service and indicates the ALJ simply relied on his finding of non-severity as a substitute for a proper RFC analysis") (quoting *MacDonald*, 2019 WL 3067275, at *3) (internal quotation marks omitted).

In contrast to those cases, a court in another case favorably relied on an ALJ's virtually identical statement that the RFC formulation "reflects a degree of limitation the undersigned [h]as found in the 'paragraph B' mental function analysis." *Patterson v. Astrue*, No. 5:11-CV-1143, 2013 WL 638617, at *12 (N.D.N.Y. Jan. 24, 2013), *R & R adopted*, 2013 WL 592123 (N.D.N.Y. Feb. 14, 2013). But in *Patterson*, unlike here, the ALJ's RFC determination expressly addressed the plaintiff's mental functioning, stating that the plaintiff was "able to follow and understand simple directions and instructions, and she is able to maintain attention and concentration. She is limited to simple, routine, repetitive type tasks involving occasional contact with others." *Id.* at *13. *Mandy C.* distinguished *Patterson* on precisely that basis, noting that, "unlike in *Patterson*, the ALJ's RFC determination contains no limitations or restrictions with respect to plaintiff's mental impairments," thus depriving the court of the ability to reliably assess whether the ALJ

properly considered the non-severe impairment limitations.  2020 WL 1245348, at *6. The circumstances here are substantially closer to those of *Garcia*, *Mandy*, and *MacDonald* than they are to those in *Patterson*.[8]

Nor is the ALJ's decision saved by her general statement at step two that there is insufficient evidence to show that either of the mild impairments she found "has more than *di minimis* effect" on Coulter's ability to perform physical or work activities.  (R. 461.) Again, that statement was made only during step two in assessing whether Coulter's impairments were severe, not during formulation of the RFC, and is a statement that courts have found insufficient as a substitute for a proper analysis of non-severe impairments as part of the RFC analysis.  *See Garcia*, 2022 WL 4234555, at *9 (remanding despite determination at step two that plaintiff's non-severe mental impairments "did not cause more than minimal limitation in her ability to perform basic mental work activities") (internal quotation marks and brackets omitted); *MacDonald*, 2019 WL 3067275, at *2 (remanding even though the ALJ found, at step two, that the plaintiff's major depressive order "does not cause more than a minimal limitation in her ability to perform basic mental work activities") (internal quotation marks and brackets omitted).

---

[8] The Commissioner contends that the ALJ should not be required to "reiterate" in formulating the RFC what the ALJ already discussed at step two.  (Def. Mem. at 17.) That misses the point.  The step two and RFC analyses are, as explained above, analytically distinct.  At step two, the ALJ assesses the extent of various mental functions. But in formulating the RFC, the ALJ must assess the extent to which the non-severe impairments require accommodation.  The Commissioner also misses the point in suggesting that the issue is merely about where in an ALJ's opinion a particular discussion appears.  (Def. Mem. at 17.)  The error is not one of location but rather the failure to conduct the requisite analysis.

The Court's lack of confidence that the ALJ performed the proper analysis is further heightened by the ALJ's characterization of Dr. Shear's opinions.  The ALJ stated that Dr. Shear "opined that the claimant had no functional limitations due to his mental impairments."  (R. 461.)  The record reflects that in 2018 Dr. Shear provided an opinion finding no mental limitations of any kind.  (R. 347-52.)  But two years later in 2020, Dr. Shear noted several functional limitations, albeit mild, including with respect to Coulter's ability to interact with others social interaction, his ability to concentrate, persist, or maintain pace, and his ability to adapt.  (R 981-83.)  To be sure, Dr. Shear opined that Coulter was not limited functionally in remembering locations and work-like procedures, understanding and carrying out very short and simple instructions, and understanding and carrying out detailed but uninvolved written or oral instructions.  (R. 982.)  But those are only some of many functional areas, and the ALJ's assertion that Dr. Shear found "no" functional limitations due to mental impairments is manifestly inconsistent with the record.  This case thus is not one where the Court, despite the "absence of an express rationale for [the] ALJ's conclusions," can "look to other portions of the ALJ's decision and to clearly credible evidence" to find "that [their] determination was supported by substantial evidence."  *Salmini v. Commissioner of Social Security*, 371 F. App'x 109, 112 (2d Cir. 2010) (cited in Def. Mem. at 16).

Finally, the Court cannot conclude that the ALJ's error was harmless.  "[A]n ALJ's failure to mention non-severe impairments in formulating the RFC may be considered harmless error absent evidence that these impairments contributed to any functional limitations."  *Amparo*, 2022 WL 3084482, at *11 (internal quotation marks omitted).  That is not the case here.

The resident supervisor position is skilled work.  (R. 467.)  "Adequate consideration of a plaintiff's non-severe mental impairments becomes particularly important where the disability determination turns upon her ability to perform skilled or highly skilled work." *Novas*, 2023 WL 2614362, at *12; *see also Garcia*, 2022 WL 4234555, at *14 (failure to address mild mental impairments in formulating RFC was not harmless where ALJ determined that claimant was able to perform her past work which was semi-skilled); *Del Priore v. Commissioner of Social Security*, No. 17-CV-5709, 2019 WL 4415279, at *3 (E.D.N.Y. Sept. 16, 2019) (remanding where ALJ found that plaintiff could perform past relevant work as airport operations duty manager without adequately considering whether his mild mental limitations would impact his ability to perform that highly skilled work).

VE Marracco's testimony proves the point.  Dr. Shear's opinion regarding Coulter's mental impairments, which the ALJ credited, opined that Coulter had a mildly limited ability to interact with others; that Coulter could work appropriately with the general public, co-workers, and supervisors only "[s]ometimes, but not consistently; and that Coulter could only "[s]ometimes, but not consistently," maintain socially appropriate behavior and respond appropriately to changes in work settings.  (R. 981-83.)  Yet, VE Marracco, whom the ALJ also credited, testified that such limitations would "eliminate" the job of resident supervisor for Coulter. [9]  (R. 526-27.)  That makes eminent sense as residential counseling involves considerable interaction with others.  The Court cannot discern, however, whether the ALJ even considered the issue.

For the foregoing reasons, remand is required.

_____

[9] VE Marracco's answer about the incompatibility of the resident supervisor job with a limited ability to interact appropriately with others came in response to a question posed by Coulter's attorney, not the ALJ.  (*See* R. 527.)

**CONCLUSION**

The ALJ erred by failing to explain the basis for not including any mental limitations in Coulter's RFC even though the ALJ had determined at step two that Coulter had mild limitations in two functional areas.   To the extent not set forth above, the Court has considered the parties' arguments and finds them to be without merit.   Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), Coulter's motion is GRANTED and the Commissioner's motion is DENIED.   The Clerk of Court is directed to enter Judgment in favor of the Plaintiff and to close the case.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: May 10, 2023
       New York, New York

Copies transmitted on this date to all counsel of record.